[No. 21148. Department One. September 5, 1928.]

CARRIE BELLE BLOOD, *as Administratrix, Appellant,* v. O. R. AUSTIN *et al., Respondents.*[1]

*W. H. Abel* and *A. M. Abel,* for appellant.

*Theodore B. Bruener,* for respondents.

MITCHELL, J.—This action was brought against the driver of an automobile and his wife, on account of his alleged negligence causing the death of an invited guest. The trial court directed a verdict for the de-

[1]Reported in 270 Pac. 103.

fendants on the ground that it must be held, as a matter of law, that the evidence was insufficient to show gross negligence or wanton injury on the part of the driver. The plaintiff has appealed from a judgment on the verdict.

Doctor O. R. Austin will be spoken of as the respondent. He and his wife invited Mr. and Mrs. Blood to join them in a trip from Aberdeen to Port Townsend and return, in the month of December, to attend a meeting at Port Townsend assisting in the organization of a women's auxiliary to the Spanish-American War Veterans' Organization. Returning from Port Townsend, they left about eight o'clock in the morning, respondent driving the car with Mr. Blood on the front seat with him. The ladies occupied the rear seat. The automobile was a seven-passenger Studebaker touring car. All of the parties were close friends of several years standing, and the Bloods had frequently joined the Austins in automobiling, with the doctor driving.

Mrs. Blood testified that, during the first twenty miles on the return trip, the respondent was cautioned several times by others in the car about driving too fast. That he was thus cautioned, was denied by him and his wife. In this respect, however, as well as others, we accept the testimony most favorable to the appellant.

The weather was cold, below freezing, and appellant testified that the respondent drove rather fast, by spurts. About two miles further on, the accident happened on a right hand curve in the highway. All along, the road was in good condition. It was a graveled road, the traveled portion being twenty feet wide. Two hundred and fifty feet from the curve, there was the usual caution sign of "curve 250 feet." Appellant testified that the respondent started to speed up about one hundred to two hundred feet from the sign, at which time

his speed was estimated at thirty to forty miles an hour, at which time her husband asked him to go slow. She testified:

"Q. When did your husband ask him to go slow? A. When he saw he was speeding up. He probably saw the sign ahead when he told him. Q. After you made a protest, or your husband made the protest, did he start to slow down then? A. Yes. Q. When Mr. Blood made the protest against his fast driving what did he say—those few seconds before the accident occurred, and when the doctor you say started to speed up. What did Mr. Blood say? A. He said, 'You are going a little too fast, Doc.' A. And then the doctor started to slow down? A. Sure. Q. He did? A. Yes sir. . . . Q. If I understand the situation correctly, then Mr. Blood made this protest or told Dr. Austin, 'Doc you are going a little too fast, Doc,' the doctor started to slow down but couldn't slow down in time before the car went over. Is that correct? A. Yes that is it."

The curve was seventy-five to one hundred feet in length, around a hillside on the right. The car ran against a railing on the left, which gave away about the center of the curve, causing the car to topple down an embankment, resulting in the death of Mr. Blood. Upon approaching the curve and within it, the right hand side of the road had chuck holes or ice pockets, as they were called by different witnesses, and in taking the curve, the car was driven along the center of the roadway. The roadway was frozen and covered with loose round gravel or rocks, as different witnesses described it, similar to the situation in the case of *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27, causing a lateral skidding or sliding on the pebbles of the wheels of the car, to the left until the railing was struck. Upon examination, it was found that the posts supporting the railing were rotten. There was no other traffic in the vicinity at that time.

The accident was a most unfortunate one, of course, but under the rule in this state, whatever it may be in other states, as announced in *Heiman v. Kloizner,* 139 Wash. 655, 247 Pac. 1034; *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27, and *Klopfenstein v. Eads,* 143 Wash. 104, 254 Pac. 854, 256 Pac. 333, it cannot be held that the injury was wanton or the result of gross negligence on the part of the respondent. As to an invited guest one is required to exercise only slight care and will be liable only for gross negligence. This is the theory and doctrine of our cases, and under the facts in this cause, fully as strong in favor of the one charged as were the facts in each of our former cases cited in favor of the persons therein charged, it must be held, as a matter of law, as the trial court decided, that there was no case to go to the jury.

Affirmed.

BEALS, PARKER, and ASKREN, JJ., concur.