[No. 25042. *En Banc.* October 17, 1934.]

FRED MEATH, *Appellant,* v. NORTHERN PACIFIC RAIL-
WAY COMPANY *et al., Respondents.*[1]

*Leo Teats* and *Ralph Teats,* for appellant.

*Shank, Belt & Rode,* for respondent Robinson.

MAIN, J.—This action was brought to recover dam-
ages for personal injuries. The cause was tried to the

[1]Reported in 36 P. (2d) 533.

court and a jury. At the conclusion of the plaintiff's evidence, each of the defendants challenged the sufficiency thereof and moved for a dismissal. The motion of the defendant, the Northern Pacific Railway Company, was sustained, and that of the other defendant, Marvin Robinson, was denied. The trial resulted in a verdict of five thousand dollars against the defendant Robinson. He moved for judgment notwithstanding the verdict, and, in the alternative, for a new trial. The trial court sustained the motion for judgment notwithstanding the verdict and denied the motion for a new trial. Judgment was entered dismissing the action, from which the plaintiff appeals.

The accident which caused the injury for which recovery was sought occurred on Union avenue in the city of Tacoma, at about the hour of nine o'clock p. m., January 22, 1933. Union avenue extends north and south, and is crossed at the place of the accident by six railway tracks. To the north of the tracks, the street is paved with concrete, also to the south, but across the tracks the roadway is planked. All of the railway tracks curve slightly. The curve of the three southern tracks is with the convex side to the north, and the convex side of the curve of the three northern tracks is to the south. The north rail of the south track is approximately one and one-half inches higher than the south rail. The planking is slightly lower than the rails. The railway tracks and the plank crossing made a street that was rough or bumpy. Just a short distance to the north of the north track is what is called a "wigwag," erected upon a concrete base. There is also one south of the south track. About eight hundred feet south of the south track, Union avenue enters South Tacoma way, which is a street leading into that part of the city of Tacoma known as South Tacoma.

The respondent Marvin Robinson was the owner of a Ford coupe, which is an automobile of light weight and short wheel base. Sometime during the morning of the day of the accident, the respondent invited appellant, Fred Meath, and one Frank Thomas to accompany him, as his guests, to Olympia to visit friends. All of the young men were experienced automobile drivers or truck drivers, and had been over the crossing mentioned many times and knew its condition. On the evening of the accident, it was raining, and the roadway was slippery.

The three young men left Olympia to return to Tacoma probably between seven-thirty and eight o'clock. After driving a short distance out of the city of Olympia, the respondent asked the appellant to take the wheel and do the driving, which he did. When they arrived in South Tacoma, which was something like a mile from the place of the accident, they stopped, the appellant saying that he wanted to go into a pool hall and see a friend. He entered the pool hall, did not find the friend, and, when he came out, approached the car on the right. As he had ridden from Olympia, the appellant was on the left at the wheel, Thomas in the center, and the respondent on the right. When the appellant approached the right-hand side of the car after coming from the pool hall, the respondent said to Thomas, "Slide over," which would place Thomas under the wheel. The appellant got into the car on the right side, Thomas at the wheel, and the respondent riding in the center. They proceeded along South Tacoma way until they reached Union avenue, when the automobile was turned into that street.

From Union avenue to the railway tracks, there is a down grade of approximately two and one-half per cent. Thomas, driving the automobile, was proceeding at a speed of forty or forty-five miles an hour, and

did not slacken that speed before attempting to cross the railway tracks. Just before they reached the south rail, the respondent exclaimed, "Take her easy." When about one hundred fifty feet from the north wigwag, Thomas having put on the brake, the car skidded until it hit the base of that wigwag, turned over on its side, and the appellant sustained the injury for which he sought recovery.

The facts, above stated, are such as we believe the jury had a right to find from the evidence, though there is dispute in the evidence with reference to some of the material matters.

This is a host and guest case. The appellant, being the guest of the respondent upon the trip which resulted in the accident, can only recover when the evidence is such that the jury could find therefrom gross negligence, which is a failure to exercise slight care. *Saxe v. Terry,* 140 Wash. 503, 250 Pac. 27; *Blood v. Austin,* 149 Wash. 41, 270 Pac. 103; *Trunk v. Wilkes,* 162 Wash. 114, 297 Pac. 1091.

In a number of cases, it has been held by this court that, where the driver of an automobile approaches a curve, knowing the condition of the roadway thereat, at such speed that he cannot make the turn, and the automobile leaves the road, the jury may find him guilty of gross negligence. *Welch v. Auseth,* 156 Wash. 652, 287 Pac. 899; *Gough v. Smalley,* 160 Wash. 193, 294 Pac. 1007; *Zelinsky v. Howe,* 163 Wash. 277, 1 P. (2d) 294. That rule would appear to be equally applicable where the driver of an automobile, with knowledge of the condition of the roadway, drives upon a rough and bumpy stretch thereof, at such speed that he loses control of the car. The principle must be the same when applied to the condition of a roadway as when applied to a curve.

The cases of *Saxe v. Terry,* 140 Wash. 503, 250 Pac.

27, and *Blood v. Austin,* 149 Wash. 41, 270 Pac. 103, are different from this case, in that, in each of those cases, on the turn there was gravel or small rocks, which was a condition that the driver of the automobile could not have anticipated. Here, Thomas, the driver of the automobile, as already pointed out, had been over the stretch of roadway where the accident happened, and knew the condition thereof.

If it should be said that the applying of the brake was an act of care, it would not affect the situation, because the driver of an automobile may not exculpate himself of the charge of gross negligence by showing that he did everything possible to extricate himself from a position of peril which was caused by his own reckless conduct.

In *Devereaux v. Blanchard,* 174 Wash. 673, 26 P. (2d) 82, it was said:

"We have had occasion recently to point out that a driver of an automobile may not exculpate himself of the charge of gross negligence, as a matter of law, by showing that he did everything possible to extricate himself from a position of peril which was created by his own wantonly reckless conduct."

The cases of *Lewis v. Sussman,* 173 Wash. 480, 23 P. (2d) 883, and *Dye v. Seattle,* 173 Wash. 515, 24 P. (2d) 67, are to the same effect.

In the case now before us, the gross negligence, which the jury had a right to find, consisted in entering upon the railway crossing at the speed mentioned, with knowledge of the condition of the roadway and without the exercise of slight care. The case of *Dawson v. Foster,* 169 Wash. 516, 14 P. (2d) 458, is different, because, there, the driver of the automobile exercised slight care because he slowed down before entering the zone of danger; while, in the case here pre-

sented, there was no care exercised, as the approach was made to the dangerous condition of the roadway.

The next question is whether the appellant is chargeable with contributory negligence, as a matter of law, because he did not sooner give a warning to the driver of the automobile. He testified that the reason that he did not before give a warning or call the attention of the driver to the condition of the roadway was the fact that he was aware that Thomas knew the condition thereof, and he, the appellant, thought "he was going to slow down."

Whether the appellant was guilty of contributory negligence, depends upon whether he acted as a reasonably prudent person would under like or similar circumstances. *Sadler v. Northern Pac. R. Co.*, 118 Wash. 121, 203 Pac. 10; *Bauer v. Tougaw*, 128 Wash. 654, 224 Pac. 20; *Gillum v. Pacific Coast Railroad Co.*, 152 Wash. 657, 279 Pac. 114; *Graves v. Mickel*, 176 Wash. 329, 29 P. (2d) 405. It must be remembered that contributory negligence is an affirmative defense, and the burden was upon the respondent in this case to establish that defense.

Before we could say that the appellant was guilty of contributory negligence, it would be necessary for us to find affirmatively that that defense was made out as a matter of law. This we cannot do in this case. The question as to whether the appellant acted as a reasonably prudent person was one of fact for the jury. The cases of *Pinckard v. Pease*, 115 Wash. 282, 197 Pac. 49, and *LeDoux v. Alert Transfer & Storage Co.*, 145 Wash. 115, 259 Pac. 24, are each entirely different in their facts.

It is said further that the driver of the car at the time of the accident was as much the agent of the appellant as he was of the respondent. But we see nothing in this case to establish such agency, as a mat-

ter of law. The respondent was the owner of the car, and entitled to control the use thereof. The appellant, by approaching the right-hand side of the car when he came out of the pool hall and getting into the car on that side, after the respondent had said to Thomas, who was riding in the center, "Move over and go ahead," did not by this act make Thomas his agent in any sense.

With reference to what happened at the pool hall, the respondent testified:

"Fred wanted to go in and see a friend for a few minutes and we just stopped, and Frank and I stayed in the car. It happened that I was on the right hand side of the car and Fred came right out and I slid over into the seat and I told Frank to go ahead."

The questions of gross negligence and contributory negligence being questions of fact for the jury, the trial court erred in granting the motion for judgment notwithstanding the verdict and dismissing the action.

The judgment will be reversed, and the cause remanded with direction to the court to enter a judgment upon the verdict.

MITCHELL, BLAKE, MILLARD, TOLMAN, HOLCOMB, STEINERT, and GERAGHTY, JJ., concur.

BEALS, C. J., dissents.