**Edith PETERSON, Appellant,**

v.

**Marie EXUM, Appellee.**

**No. 16757.**

United States Court of Appeals
Ninth Circuit.

Nov. 1, 1960.

Rehearing Denied Dec. 2, 1960.

Hull, Armstrong & Vander Stoep, Grant Armstrong, J. A. Vander Stoep, Chehalis, Wash., Gene L. Brown, Grant Pass, Or., for appellant.

Lycette, Diamond & Sylvester, Martin L. Wolf, Seattle, Wash., for appellee.

Before CHAMBERS and HAMLEY, Circuit Judges, and SOLOMON, District Judge.

HAMLEY, Circuit Judge.

Edith Peterson brought this action against her sister, Marie Exum, to recover damages for injuries received while riding as a guest passenger in an automobile driven by Mrs. Exum. The accident occurred at Malone, Grays Harbor County, in the State of Washington. Federal jurisdiction rests on diversity of citizenship.

The case was tried to a jury which returned a verdict for plaintiff in the amount of $50,000. Judgment n. o. v. was entered for defendant. Plaintiff appeals.

The only question presented here is whether the trial court erred in concluding that there was insufficient evidence to support the jury finding of gross negligence on the part of appellee driver. Such a finding is necessary in Washington to support a judgment for damages in favor of a guest passenger against a host driver, where the accident is not intentional or caused by intoxication. RCW 46.08.080.

The accident occurred at the T intersection formed by the western terminus of an east-west county road and a north-south arterial highway known as primary state highway No. 9. After dark on September 2, 1957, Mrs. Exum was driving in a westerly direction on the county road, intending to make a left turn at the intersection and proceed in a southerly direction on the state highway. Mrs. Peterson was riding as a passenger in the front seat of her sister's car.

A store and service station is located at the southeast corner of the intersection. The front of this building is about thirty-five feet from the traveled portion of highway No. 9. The north side of the building is approximately twenty feet from the county road upon which Mrs. Exum was driving. The presence of this building tends to obscure the vision of westbound drivers looking south and northbound drivers looking east as they approach this intersection.

An arterial stop sign with which Mrs. Exum was familiar confronted her as she approached the intersection. She saw the stop sign on the occasion in question, and also saw the car of Albert Lee Prante

approaching the intersection from the south. A violent collision occurred between the two vehicles at the intersection, as a result of which Mrs. Peterson received her injuries.

■ In Washington gross negligence has been defined as the want of slight care. Craig v. McAtee, 160 Wash. 337, 295 P. 146. Whether it exists in a particular case depends upon the facts and circumstances of that case. Pitschman v. Oman, 177 Wash. 55, 30 P.2d 945.

Appellant contends that evidence tending to show the want of slight care on the part of Mrs. Exum was sufficient to present a jury question as to gross negligence on either of two theories. The first concerns evidence of Mrs. Exum's alleged failure to stop or diminish her speed before entering the arterial highway though she was aware of the potential hazard.

If Mrs. Exum, unaware of the approaching car, came to a virtual stop before she entered the arterial, even though she did not come to a complete stop, this would amount to the exercise of slight care and preclude a finding of gross negligence. Pitschman v. Oman, supra. On the other hand, if she had seen both the stop sign and the other car and nevertheless entered the intersection without heeding the stop sign and without reducing her speed, these facts would support a finding of gross negligence. Secanti v. Jones, Or., 349 P.2d 274.

■ Prante testified that Mrs. Exum entered the intersection without stopping, and that she did not slow up. On cross-examination Prante stated that he did not know the speed of the Exum car at the time of the collision. He did not, however, retract his testimony that she neither stopped nor reduced her speed. But appellee contends that further cross-examination revealed that Prante did not see the Exum car until it entered the intersection. Hence, it is argued, Prante was in no position to say whether Mrs. Exum had stopped or had diminished her speed.

The strongest statements contained in this cross-examination tending to show that Prante did not have an opportunity to observe the Exum car were those contained in the questions asked, not in the answers given. While certain of his answers, considered separately, tend to support the contention that Prante may not have had sufficient opportunity to make the necessary observation, he tempered these from time to time. He answered "no" when questioned whether he saw her automobile before it got on the highway. He then immediately added: "I did not see her until she approached the highway." When further questioned on this point Prante answered: "Well, you can't see very far back until any car approaches the highway unless they happen to be right up there, sir."

In addition to this cross-examination the jury had before it a diagram of the scene of the accident showing the location of the building which to some extent obscured Prante's view. It also heard Mrs. Exum testify that she was able to see Prante's approaching automobile a block or two away. Considering Prante's testimony as a whole, together with this other evidence, the jury could reasonably have found that Prante saw the Exum car sufficiently in advance of the accident to enable him to observe whether the latter car had stopped or diminished its speed.

Appellee has called our attention to Knight v. Trogden Truck Company, 191 Wash. 646, 71 P.2d 1003. Under the facts of that case a car collided with timbers projecting from the rear of a truck allegedly stopped on the highway ahead. The only evidence that at the time of the accident the truck was standing still was testimony by the driver of the car. That witness also testified that he was driving thirty miles an hour and was within ten feet of the truck when he first saw it "just a split flash of a second" before the collision. This testimony was held to afford no basis for a jury finding that the truck was stopped.

Here Prante testified that he could not see the Exum car until it "approached" the highway or "until the last few sec-

onds * * *." This was a sufficiently greater opportunity for observation than was had by the witness in the Knight case, so that it cannot here be held as a matter of law that his testimony was beyond belief by a reasonable man.

It must be borne in mind that in actions at law under federal diversity jurisdiction the Seventh Amendment guarantees a right to trial by jury. Preservation of that right requires that questions of fact be left to the jury and that findings of fact by a jury be left undisturbed unless reasonable men must conclude that there is insubstantial evidence in their support.

In our opinion it was for the jury to find whether Prante saw the Exum car sufficiently in advance of the accident to enable him to ascertain whether it had stopped or its speed had been diminished. It apparently found that he had sufficient opportunity to make that observation. It was therefore entitled to accept his testimony that the Exum car did not stop and that its speed was not reduced.

While this is enough to require reversal, mention may also be made of the second line of evidence relied upon by appellant as sufficient to support a finding of gross negligence by Mrs. Exum.

Mrs. Exum, traveling on the county road, approached the arterial highway from the east. She testified that she pulled up to the gravel shoulder of the arterial and stopped about six or eight feet from the blacktop surface of that highway. According to Mrs. Exum, her car was then at about a forty-five-degree angle towards the south preparatory to making a left turn on to the arterial.

While stopped in this position, Mrs. Exum testified, she saw the lights of Prante's car a block or two away. It then seemed to her that he was approaching at a "terrific rate of speed." She gave various estimates of such speed ranging from fifty to seventy miles an hour. Prante testified that he was actually traveling between fifty-five and sixty miles an hour at that time. The speed limit on the arterial was sixty miles an hour.

Mrs. Exum further testified that after she had come to a stop and had observed Prante's approaching car she decided to wait until Prante passed before making her left turn. She stated, however, that instead of passing, Prante veered off the arterial and onto the shoulder on the right side of the arterial and struck her vehicle while it was still standing on the shoulder.

Prante on the other hand testified that he did not at any time leave the main part of the highway. According to this witness, he did not swerve to the right but swerved to the left when the Exum car appeared directly in front of him. A state patrolman who investigated the accident shortly after it occurred gave testimony tending to indicate that the Prante car continued in the northbound lane up to the point of impact and then swerved somewhat to the left. His testimony was considerably undermined on cross-examination, but it was for the jury to determine its probative value.

Appellant argues that the jury was entitled to accept Mrs. Exum's testimony that she stopped her vehicle and observed the speed of the approaching Prante car, without being required to also accept her testimony that her car remained stationary after this observation was made.

We agree with appellant that the jury was entitled to accept as much of Mrs. Exum's testimony as it found credible and to reject the rest. Hence it could have found that she stopped on the shoulder and observed Prante's rapidly approaching car, without being required to also find that her car remained stationary or that Prante swerved to the right and collided with her vehicle on the shoulder.

If the jury followed this course of reasoning then it could also have found that while in a place of safety and aware of the danger on the arterial Mrs. Exum nevertheless pulled directly into the path of Prante's car. Viewed in this light, Mrs. Exum's act of care in stopping and observing becomes merely the means by which she became aware of the hazard

and further supports a finding of gross negligence.

We hold that there is substantial evidence in the record supporting the jury finding of gross negligence on the part of Mrs. Exum.

Reversed and remanded with direction to reinstate the jury verdict.

CHAMBERS, Circuit Judge (concurring).

As the trial judge thought, I think the evidence of gross negligence on the part of appellee is thin. But I assume that one is not required to have gross evidence to prove gross negligence. I could not concur in the above decision were it not for the comparatively recent reversals by the Supreme Court of Johnson v. Union Pacific, 352 U.S. 957, 77 S.Ct. 359, 1 L.Ed. 2d 316; Gibson v. Phillips Petroleum Co., 352 U.S. 874, 77 S.Ct. 16, 1 L.Ed.2d 77; and Williams v. Carolina Life Insurance Co., 348 U.S. 802, 75 S.Ct. 30, 99 L.Ed. 633.

Factually, the cases are not the same, but I think they indicate what the highest court would do with this case.